Citation Nr: 1505528 
Decision Date: 02/05/15 Archive Date: 02/18/15

DOCKET NO. 08-15 908 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to service connection for a cervical spine disorder. 

2. Entitlement to service connection for hypertension, claimed as secondary to service-connected posttraumatic stress disorder (PTSD). 

3. Entitlement to an effective date prior to March 7, 2013, for the award of service connection for coronary artery disease.


REPRESENTATION

Veteran represented by: Blinded Veterans Association


WITNESSES AT HEARINGS ON APPEAL

The Veteran, his spouse, and his daughter

ATTORNEY FOR THE BOARD

John Francis, Counsel 


INTRODUCTION

The Veteran served on active duty from December 1967 to September 1969 including service in the Republic of Vietnam from January 1969 to September 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a rating decision in December 2006 and October 2014 from the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California. In July 2013, the Board remanded the service connection claims for additional development and they now return for final appellate review.

Relevant to the service connection claims, the Veteran, his spouse, and his daughter testified at hearings before a Decision Review Officers at the RO in August 2008 and November 2009. Additionally, the Veteran and his spouse testified at a video-conference before the undersigned Veterans Law Judge in March 2013. Transcripts of all the hearings are of record. 

The Board notes that, subsequent to the agency of original jurisdiction's (AOJ's) most recent adjudication of the Veteran's service connection claims in the March 2014 supplemental statement of the case, additional evidence consisting of lay statements, a medication list, and a September 2014 VA heart examination was associated with the record. While the Veteran has not waived AOJ consideration of such evidence, the Board finds that, as such documents are irrelevant to the issues adjudicated herein, there is no prejudice to him in the Board proceeding with a decision at this time.

In a January 2015 communication, the Veteran raised the issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). Such issue has not been adjudicated by the AOJ. Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. 
 
The issues of entitlement to an earlier effective date for the award of service connection for coronary artery disease is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. A cervical spine disorder is not related to any disease, injury, or incident of service, to include a fall from a truck in 1969, and arthritis did not manifest within one year of service discharge.

2. Hypertension is not related to any disease, injury, or incident of service, did not manifest within one year of service discharge, and was not caused or aggravated by the Veteran's service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for service connection for a cervical spine disorder are not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014). 

2. The criteria for service connection for hypertension are not met. 38 U.S.C.A. 
§§ 1101, 1110, 1112, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2006), (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the notice requirements of 
38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

In the instant case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a September 2006 letter, sent prior to the initial unfavorable decision issued in December 2006, and a November 2007 letter, advised the Veteran of the evidence and information necessary to substantiate his service connection claims, to include, as relevant to hypertension, on a secondary basis, as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letters advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. 

While the November 2007 letter was issued after the initial December 2006 rating decision, the United States Court of Appeals for the Federal Circuit has held that VA could cure such a timing problem by readjudicating the Veteran's claim following a compliant VCAA notification letter. Mayfield v. Nicholson, 444 F. 3d 1328, 1333-34 (Fed. Cir. 2006). The Court clarified that the issuance of a statement of the case could constitute a readjudication of the Veteran's claim. See Prickett v. Nicholson, 20 Vet. App. 370 (2006). In the instant case, after the November 2007 letter was issued, the Veteran's claim was readjudicated in the April 2008 statement of the case and the April 2009, July 2010, August 2012, and March 2014 supplemental statements of the case. Therefore, any defect with respect to the timing of the VCAA notice has been cured. 

Relevant to the duty to assist, the Veteran's service treatment records, VA outpatient treatment records, Social Security Administration (SSA) records, VA primary care disability benefits questionnaires dated in January 2013 and February 2013, the results of VA examinations in March 2012, and VA opinions in January 2014 have been obtained and considered. The Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was also afforded a VA examination in March 2012 with respect to the service connection issues decided herein. However, in the July 2013 remand, the Board determined that the etiological opinions offered in conjunction with such examinations were inadequate or incomplete for adjudication purposes. Specifically, with regard to the Veteran's cervical spine disorder, the Board found that the March 2012 opinion was based entirely upon the absence of complaints in the Veteran's service treatment records, and, regarding his hypertension, the March 2012 VA examiner failed to offer an opinion regarding whether such was aggravated by his service-connected PTSD. As such, the Board remanded the case in order to obtain addendum opinions, which were offered in January 2014. The Board finds that the March 2012 VA examinations in combination with the January 2014 addendum opinions are adequate to decide the issues as they are predicated on an interview with the Veteran; a review of the record, to include his service treatment records; and a physical examination with diagnostic testing. The opinions proffered considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issues decided herein has been met. 

In August 2008 and November 2009, the Veteran testified at hearings before a Decision Review Officer at the RO, and in March 2013, he testified at a Board hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, during the hearings, the Decision Review Officers and undersigned Veterans Law Judge noted the issues on appeal. Also, information was solicited regarding the Veteran's in-service experiences he alleges resulted in his cervical spine disorder and hypertension, the basis of his belief that his service-connected PTSD caused or aggravated his hypertension, the type and onset of symptoms, and the location and availability of treatment records. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. Moreover, neither the Veteran nor his representative have asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2) or have identified any prejudice in the conduct of the hearings. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the necessary elements. Furthermore, following such hearings, additional development consisting of obtaining outstanding records and affording the Veteran examinations and opinions regarding the etiology of his claimed disorders, was undertaken, to include at the request of the Board in the July 2013 remand. As such, the Board finds that, consistent with Bryant, the Decision Review Officers and undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board can adjudicate the claims based on the current record.

As noted previously, in July 2013, the Board remanded the case to obtain the evidence submitted by the Veteran at his March 2013 Board hearing, obtain outstanding VA treatment records, and obtain addendum opinions from the March 2012 VA examiners regarding the etiology of the Veteran's claimed disorders. Additional VA outpatient treatment records and adequate addendum opinions were obtained, and the Veteran was advised by letter in July 2013 to submit the evidence identified at the hearing. Therefore, the Board finds that the AOJ has substantially complied with the July 2013 remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of his claims.


II. Analysis

The Veteran served as a U.S. Army food service specialist including service in the Republic of Vietnam from January 1969 to September 1969. He was awarded the Bronze Star Medal and two Army Commendation Medals (all without the "V" for valor) for outstanding achievements during military operations against a hostile force. The Veteran contended that he also received the Purple Heart Medal but this is not confirmed in the service personnel records. In a June 2014 letter, the Veteran's spouse noted that the Veteran "had been cheated out of a Purple Heart." However, he provided a photograph of a framed display of his awards that included a Purple Heart Medal. He contended in many written statements and during the Board hearing that he injured his neck while serving in Vietnam when he was knocked off a truck when a bullet or some other debris hit his helmet. He further alleged that his service-connected PTSD caused or aggravated his hypertension. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as arthritis and cardiovascular-renal disease including hypertension, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, service connection may be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology. The use of continuity of symptoms to establish service connection is applicable in this case as arthritis and hypertension are listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. 
§ 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

The Board notes that the provisions of 38 C.F.R. § 3.310 were amended during the pendency of the Veteran's claims, effective October 10, 2006; however, the new provisions state that service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b). Although the stated intent of the change was merely to implement the requirements of Allen, supra, the Board finds that the new provisions amount to a substantive change to the manner in which 38 C.F.R. § 3.310 has been applied by VA in Allen-type cases since 1995. Consequently, the Board will apply the older version of 38 C.F.R. 
§ 3.310, which is more favorable to the Veteran as it does not require the establishment of a baseline level of disability before an award of service connection may granted. See generally, Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003); VAOPGCPREC 7-2003. 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). ("Although interest may affect the credibility of testimony, it does not affect competency to testify.")

Lay evidence can be competent and sufficient to establish a diagnosis when a layperson (1) is competent to identify the medical condition; or, (2) is reporting a contemporaneous medical diagnosis; or, (3) describes symptoms at the time which supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Although a lay person is competent in certain situations to provide a diagnosis of a simple condition, a lay person is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Likewise, mere conclusory or generalized lay statements that a service event or illness caused a current disability are insufficient. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

The Board must weigh any competent lay evidence and to make a credibility determination as to whether it supports a finding of service incurrence; or, if applicable, continuity of symptomatology; or both, sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007); see also Layno, supra. The credibility of lay evidence may not be refuted solely by the absence of corroborating contemporaneous medical evidence, but it is a factor. Davidson v. Shinseki, 581 F.3d at 1313, 1316 (Fed.Cir. 2009). Other credibility factors are the lapse of time in recollecting events attested to, prior conflicting statements as opposed to consistency with other statements and evidence, internal consistency, facial plausibility, bias, interest, the length of time between alleged incurrence of disability and the earliest or first corroborating medical or lay evidence thereof, and statements given during treatment (which are usually given greater probative weight, particularly if close in time to the onset thereof). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Cervical Spine Disorder

Service treatment records are silent for any symptoms, diagnoses, or treatment for a an injury, to include pertaining to the neck, from a fall from a truck while under enemy fire during the Veteran's service in Vietnam or otherwise. The records do show treatment for twisted right ankle in May 1968, and a fall and injury to the left arm and wrist in October 1968, prior to Vietnam service. In a September 1969 discharge physical examination, the Veteran denied any arthritis, back trouble, or unreported injuries, and the examining physician noted no spinal or upper extremity musculoskeletal abnormalities or scars. 

During the August 2008 RO hearing, the Veteran testified that he fell from a truck in June 1968 while in a convoy taking food supplies to units in the field. He testified that he was hit by a bullet or other object, was knocked from the truck, struck his neck in the fall and was evacuated from the location by helicopter on a stretcher. He reported that he incurred abrasions of the right arm, shoulder, and face. He reported that X-rays obtained at that time were negative and that he was provided a cervical collar for two to three weeks and returned to duty as a supply clerk. The Veteran provided a copy of a letter that he had written to his family referring generally to an injury to his right hand and several photographs taken during his Vietnam service. The photographs in the electronic file are indistinct and show bright reflections of various shapes. In one photograph, the Veteran may have a cast or bandage on the left hand and thumb. In another photograph, the Veteran may have a cast or bandage on the right arm from above the elbow to the hand and irregularly shaped images on the top of the right shoulder and right side of the scalp upper face and nose. None show a cervical collar. However, as the Veteran's description of the event is consistent with the time and circumstances of his service in Vietnam and, in view of his credible testimony of the event and the inconclusive photographs, the Board finds that the Veteran did experience a fall causing some injuries to the hands, right arm, top of the shoulder, and face. See 38 U.S.C.A. 
§ 1154(a). 

During the RO hearing, the Veteran testified that he sought VA treatment for the neck in 1970 but walked out of the clinic without receiving any treatment. He testified that he worked at many jobs for the next thirty years including as a machinist for an industrial manufacturer until January 2009. He denied any motor vehicle or workplace injuries. 

Records of private primary care showed that the Veteran sought treatment for severe neck and right arm pain in November 1997. The primary care physician noted the Veteran's report that the pain developed a few days earlier but that he did not know the cause for the pain. The physician administered pain medication, measured a full range of motion, and prescribed oral medication and heat application. There was no indication of follow up for these symptoms in records by this physician over the next several months. 

In July 2006, a VA outpatient physician noted that the Veteran forgot to tell him that he fell from a truck and hurt his neck in 1968. The Veteran reported that he recalled this event in his dreams and was filing a VA disability claim which the RO received the same month. 

In a February 2008 report to a state worker's compensation agency, a private orthopedic physician referred to an injury that occurred in December 2000 in which the Veteran sustained a crushing injury to the right hand and cervical sprain/strain with a disc lesion and radiculitis/radiculopathy. The physician also noted a history of right shoulder rotator cuff repair and bilateral carpal tunnel release procedures. The physician filed several follow up reports including a January 2009 letter again referring to the December 2000 injury and providing a diagnosis of a herniated cervical disc. In a March 2009 SSA questionnaire, the Veteran reported that his neck and hand disabilities began to affect his work three years earlier and caused him to cease work in January 2009. 

VA outpatient records starting in January 2009 through July 2013 show ongoing evaluation and treatment for neck pain with a limited range of motion. A physician noted the Veteran's report of a history of cervalgia with severe pain stable for the past ten years. In September 2009, an X-rays showed moderate disc disease at two cervical levels, and in October 2009, a magnetic resonance image showed moderate to severe disc narrowing and spondylitic changes at many levels. In May 2010, a VA neurologist noted the Veteran's report of the fall during service but that the imaging studies did not explain all the patient's symptoms. The neurologist did not comment on whether the event during service was the cause of the current spinal disease. In November 2011, a temporal artery biopsy ruled out vascular causes for the pain. The spinal diagnosis was confirmed by private imaging studies in March 2012. 

In March 2012, a VA examiner noted a review of the claims file and confirmed the diagnoses of cervical myofascial strain and degenerative disc disease. On examination, range of motion was less than normal with pain but without spasms or muscle or reflex deficits. The physician found that the current disorder was less likely than not caused by events during active service solely because there was no evidence of treatment for a neck injury during service. 

In February 2013, the Veteran's VA attending physician submitted a Disability Benefits Questionnaire reporting that a diagnosis of cervical spine strain and degenerative disc disease with limitation of motion and pain was established in March 2012 and that the disorder limited the Veteran's function. The physician did not comment on the etiology of the disorder. 

During the March 2013 Board hearing, the Veteran reported that he was hit by a bullet, thrown from a truck going 35 to 40 miles per hour, and hit his head and shoulder tumbling for 30 to 40 yards. Although he did not feel neck pain at the time, the next day he was provided a neck brace and assigned light duty for a month. After service, he tried to get treatment at a VA clinic but left because there was too much paperwork. Instead, he self-treated the pain with drugs and alcohol until 1999 and first started to seek medical care in 1997. He testified that his attending physician told him that the current cervical disorder was caused by the fall in service. The Veteran's spouse testified that the Veteran had been suffering from neck pain for all of their married life. 

In July 2013, the Board remanded the claim to obtain an addendum to the March 2012 opinion that included consideration of the Veteran's description of his injury and was not solely based on the absence of symptoms and treatment during service. In January 2014, a VA examiner noted a review of the claims file and acknowledged the in-service fall from a truck and the Veteran's contention of a continuity of neck symptoms since that time. The examiner found that the current disorder was less likely than not caused by the in-service injury because a chronic cervical spine disorder was not reported or diagnosed for many years after service, and the record showed post-service injuries, including an injury associated with a worker's compensation claim in 2000. The examiner also attributed the cervical disease to the aging process. 

The Board finds that service connection for a cervical spine disorder, diagnosed as cervical strain and degenerative disc disease, is not warranted. The Veteran is competent and credible to report on his observed symptoms and on the circumstances of his fall from a truck that likely occurred in June 1969 (versus June 1968) as consistent with his documented time in service in Vietnam. The Board finds that the fall occurred regardless of whether such was caused by enemy fire or non-hostile reasons. Although the service treatment records fail to show any treatment for injuries following the fall, the Board finds that his oral testimony, written statements, and photographs are credible to show that he sustained abrasions of the face, right shoulder, and right arm. However, a determination of the cause of Veteran's cervical spine disorder, to include a strain and degenerative disc disease, decades after an injury is a complex medical matter requiring training and experience that the Veteran does not possess as a lay person. 

The Board further finds that his and his spouse's reports of a continuity of neck pain since the fall in 1969 are not credible. From a lay perspective, it is reasonable that he sustained some form of trauma to the head and neck in the course of incurring the abrasions to the face and perhaps the shoulder, with resulting neck symptoms. However, the Board finds that the reports of chronic, continuous neck discomfort since service and throughout the Veteran's marriage are not credible for several reasons, rather than solely because the service records fail to show immediate treatment for the fall. In this regard, the photographs do not show indications such as a cervical collar that would be consistent with post-accident neck strain. The Veteran was returned to his military duties in the combat area and received several military awards for his participation in operations for the remainder of his service. The Veteran denied any injuries and no residuals, including scars, were noted on the discharge examination. The Veteran subsequently worked as a machinist from 1969 until 2009. More importantly, when seeking medical treatment in 1997, the Veteran reported that he did not know the cause for his pain that had its onset only a few days earlier. It would have been reasonable for a patient to inform this medical care provider, the SSA examiner, and his VA primary care physician of a decades long history of neck pain, self-treated with alcohol and drugs. On several occasions, clinicians noted the Veteran's report that his pain began in approximately 2000. Later from 2001 to the present, only one clinician in 2006 noted his report of an injury during service that he remembered in a dream at the time he submitted his claim for service connection. The clinician did not attribute the current symptoms to that event. In particular, the private orthopedic evaluating his symptoms for SSA and for worker's compensation purposes in 2008 noted a workplace accident in December 2000 with no mention of a previous injury as would have been appropriate. 

The Board places greatest probative weight on the opinion of the VA examiner in January 2014 who reviewed the file and acknowledged the Veteran's description of the fall. In this regard, such opinion considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Furthermore, the examiner also considered the evidence of the workplace injury in 2000, the Veteran's age, and the time between the service accident and the Veteran's own reports of the onset of pain in 1997 and following the workplace injury in 2000. Significantly, the Veteran submitted a disability examination report from his attending VA physician but that report made no mention of an accident in service. Thus, there are no contrary competent opinions of record. 

The weight of the credible and probative evidence demonstrates that the Veteran's current cervical spine disorder, to include cervical strain and degenerative disc disease, first manifested greater than one year after service and are not related to any disease, injury, or incident of service, including a fall from a truck in 1969. As the preponderance of the evidence is against this claim, the "benefit of the doubt" rule is not for application, and the Board must deny the claim. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.

Hypertension

For the purposes of establishing service connection, VA employs the definition of hypertension as provided in the rating criteria in 38 C.F.R. § 4.104 Diagnostic Code 7101, Note 1 (2014). See Adjudication Procedures Manual, M21-1MR, III.iv.E.20.d (2014). This regulation defines the term hypertension as meaning that the diastolic blood pressure is predominantly 90 mmHg or greater. Isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mmHg or greater with a diastolic blood pressure of less than 90 mmHg. 38 C.F.R. § 4.104 Diagnostic Code 7101, Note 1. VA does not recognize "pre-hypertension" as a disability for service connection purposes. M21-1MR, III.iv.4.E.20.e. All blood pressure measurements are expressed below as systolic divided by diastolic pressure in units of millimeters of mercury (mmHg). 

Service treatment records are silent for any symptoms, diagnoses, or treatment for hypertension. In a September 1969 discharge examination, the Veteran denied any history of high or low blood pressure and such was measured as 112/72. 

The earliest records of private medical care start in April 1997 when blood pressure was measured as 128/84. In November 1997, following an episode of pneumonia, blood pressure was 130/84 and, in December 1997, blood pressure was 140/100. The attending physician noted that the Veteran was anxious since the episode. In July 2000 and August 2000, the physician noted blood pressure as 140/82 and 130/80. One year later in August 2001, blood pressure was 148/90, again following a respiratory infection, and in October 2001, blood pressure was 158/92. None of these reports show a diagnosis of hypertension or the use of prescription medication. 

In November 2003, the RO granted service connection for PTSD based on the Veteran's experiences in Vietnam effective in May 2002.

VA outpatient treatment records starting in April 2003 show a diagnosis of hypertension and the use of prescription medications for control. Blood pressure was 110/80. The Veteran continued to receive on-going VA care for hypertension through July 2013. None of the outpatient clinicians noted the etiology of the disease. 

During an August 2008 RO hearing, the Veteran testified that he was first diagnosed with hypertension in 2000 and that he was told by a VA physician in approximately 2006 that his hypertension was caused by his service-connected PTSD. 

In March 2012, a VA examiner noted a review of the claims file and the Veteran's report that he had been told that he had high blood pressure in 1969 but that he first was prescribed medication in 1997. On examination, blood pressure was 148/80, 138/82, and 146/80. The physician noted that it was less likely than not that the hypertension was caused by PTSD because the two disorders arise from distinctly different vascular and psychiatric systems with no biological process between the two noted in unspecified medical literature. 

In January 2013, the Veteran submitted a Disability Benefits Questionnaire prepared by his attending VA physician who noted only that the Veteran was diagnosed with hypertension in 2002 and that the disorder was controlled with medication. He did not provide an opinion regarding the etiology of such disorder. 

During the March 2013 Board hearing, the Veteran testified that he had been prescribed medication for hypertension since 1997 and that he could feel episodes of high blood pressure during times of anxiety. 

In July 2013, the Board remanded the claim to obtain an addendum opinion addressing whether hypertension was aggravated by PTSD. In January 2014, a VA examiner noted a review of the claims file and the Veteran's contention that his PTSD caused high blood pressure or aggravated the disorder during periods of anxiety. The examiner noted that the hypertension is not diagnosed during acute episodes of high blood pressure but rather when the patient is in a calm, relaxed state. He noted that it is a normal physiological response for blood pressure to rise during increased anxiety, stress (including the physical stress of exercise), and the intake of caffeine. The examiner found that the medical records did not show an aggravation of hypertension associated with PTSD because the Veteran's disorder is controlled with minimal medication and is consistent with the Veteran's age and fitness level. 

The Board finds that service connection for hypertension is not warranted on either a direct, presumptive, or secondary basis. In this regard, the weight of lay and medical evidence shows that hypertension did not manifest during or within one year of active service and was not directly related to events in service. Rather, the Veteran acknowledged, and the medical records show, that the episodes of elevated blood pressure in 1997 and 2001 were concurrent with acute respiratory infections and did not manifest as a chronic cardiovascular disorder until approximately 2002. Therefore, service connection on a direct or presumptive, to include on the basis of continuity of symptomatology, basis is not warranted.

With respect to service connection as secondary to PTSD, the Veteran is competent to report that he was told by a physician of a relationship between the two disorders and was advised during the Board hearing that a written opinion would assist in substantiating that contention. However, his attending physician in 2013 did not offer an opinion in support of this contention and none has been received following the Board hearing. Furthermore, the Board finds that the Veteran is not competent to provide his own evidence regarding the cause of hypertension as this is a cardiovascular disease requiring evaluation by medical practitioners with training and clinical experience which the Veteran does not possess. Additionally, the Veteran's report of high blood pressure since 1969 is not credible as it is inconsistent with blood pressure measured in the September 1969 discharge examination and his denial of any history of high blood pressure in the associated medical history questionnaire. 

The Board places greatest probative weight on the opinions of the VA examiner in March 2012 and January 2014 who reviewed the file and considered the Veteran's contention but provided negative opinions. In this regard, the opinions considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. The two clinicians explained that the vascular and psychiatric disorders did not have a common physiology and that, in the Veteran's case, episodes of anxiety or stress associated with PTSD may cause an acute rise in blood pressure but did not cause or aggravate the underlying vascular disease that was better associated with aging and fitness level. There are no other competent opinions of record. 

The weight of the credible and probative evidence demonstrates that the Veteran's current hypertension is not related to any disease, injury, or incident of service, did not manifest within one year of service discharge, and was not caused or aggravated by the Veteran's service-connected PTSD. As the preponderance of the evidence is against this claim, the "benefit of the doubt" rule is not for application, and the Board must deny the claim. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for a cervical spine disorder is denied. 

Service connection for hypertension is denied. 


REMAND

With regard to the claim for an effective date prior to March 7, 2013, for the award of service connection for coronary artery disease, the Board notes that the October 2014 rating decision awarded service connection for such disease as of March 7, 2012. Thereafter, in January 2015, the Veteran submitted a notice of disagreement to the AOJ in which he indicated that he did not understand why he was not awarded benefits as of February 2012, when he suffered a heart attack. The Board finds that such statement can be reasonably construed as disagreement with the effective date assigned in the October 2014 rating decision and evidencing a desire for appellate review. 38 C.F.R. § 20.201. When there has been an initial AOJ adjudication of a claim and a notice of disagreement as to its denial, the claimant is entitled to a statement of the case. See 38 C.F.R. § 19.26. Thus, remand for issuance of a statement of the case on this issue is needed. Manlincon v. West, 12 Vet. App. 238 (1999). However, this issue will be returned to the Board after issuance of the statement of the case only if perfected by the filing of a timely substantive appeal. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997).

Accordingly, the case is REMANDED for the following action:

Provide the Veteran and his representative with a statement of the case regarding the issue of entitlement to an effective date prior to March 7, 2013, for the award of service connection for coronary artery disease. Please advise them of the time period in which to perfect his appeal. If the Veteran perfects his appeal of this issue in a timely fashion, then return the case to the Board for its review, as appropriate.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs